**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY**
**PIKEVILLE DIVISION**

| | | |
|---|---|---|
| **In re:** | ) | Chapter 11 |
| | ) | |
| **Coking Coal, LLC,** | ) | Case No. 24-70529 |
| | ) | |
| **Debtor.** | ) | |

**KENTUCKY UTILITIES COMPANY'S LIMITED OBJECTION TO
DEBTOR'S MOTION TO (I) APPROVE BIDDING PROCEDURES AND FORM
AND MANNER OF NOTICE PROPOSED AUCTION AND SALE, (II) AUTHORIZE
THE DEBTOR TO DESIGNATE A STALKING HORSE BID, (III) SET HEARING
TO CONSIDER APPROVAL OF SALE OF ASSETS OF COKING COAL, LLC FREE
AND CLEAR OF ANY INTERESTS, AND (IV) GRANTING RELATED RELIEF**

Kentucky Utilities Company including its Old Dominion Power Company unit (together "KU"), files this limited objection (the "Limited Objection") to the contemplated sale of substantially all of the Debtor's assets as set forth in *Debtor's Motion To (I) Approve Bidding Procedures And Form And Manner Of Notice Of Proposed Auction And Sale, (II) Authorize The Debtor To Designate A Stalking Horse Bid, (III) Set Hearing To Consider Approval Of Sale Of Assets Of Coking Coal, LLC, Free And Clear Of Any Interests, And (IV) Granting Related Relief* [Doc. No. 133] (the "Bid Procedures Motion"). KU states the following in support of its Limited Objection.

1. KU is a regulated utility based in Lexington, Kentucky. As of the December 16, 2024 petition date (the "Petition Date"), KU supplied utilities to the Debtor through approximately five (5) accounts (the "Accounts"). Two of these Accounts were secured by pre-petition surety bonds in the amounts of $94,000 and $144,000 and KU also held certain pre-petition cash deposits in the total approximate amount of $1,100. KU is in the process of demanding payment on the surety bonds and applying the pre-petition cash deposits, all pursuant to 11 U.S.C. § 366(c)(4).

After collection or application of these amounts, KU will be left holding security in the approximate amount of $17,000 while still being owed approximately $123,000 pre-petition.

2. On December 17, 2024, the Debtor filed *Debtor's Motion For Entry Of Interim And Final DIP Orders: (I) Authorizing Post-Petition Secured Financing Pursuant To Sections 105, 361, 362, 363, 364 and 503(b) Of The Bankruptcy Code; (II) Authorizing The Debtor To Use Cash Collateral Pursuant To Section 363 Of The Bankruptcy Code; (III) Providing Adequate Protection To The Prepetition Secured Parties Pursuant To Sections 361, 362, and 363 Of The Bankruptcy Code; (IV) Modifying The Automatic Stay Pursuant To Section 362(d) Of The Bankruptcy Code; (V) Scheduling A Final Hearing; and (VI) Providing Related Relief* [Doc. No. 35] (the "<u>DIP Motion</u>") with the Court through which the Debtor is seeking approval of postpetition loans to be provided by Tacora Capital LP ("<u>DIP Lender</u>"), with a priming senior secured lien against all DIP Collateral (as defined in the DIP Motion).[1]

3. On December 20, 2024, the Court entered that *Order Granting Debtor's Motion To Provide Adequate Assurance To Its Utilities And Impose Related Procedures* [Doc. No. 104] (the "<u>Utilities Order</u>") establishing certain procedures by which a utility provider could demand additional adequate assurance beyond the Debtor's promise to pay its post-petition obligations to its utility providers in the ordinary course of business.

4. On December 30, 2024, the Debtor filed the Bid Procedures Motion with the Court indicating that it had determined that a sale of substantially all of its assets was in the best interest of its estate. Bid Procedures Motion at ¶ 10. These assets include, without limitation, the following:

> (a) all real and personal property; (b) all tangible or intangible assets; (c) all accounts receivable; (d) all inter-company receivables; (e) all cash, cash equivalents and readily-marketable securities and other investments; (f) all deposits and prepaid

---

[1] *See* DIP Motion at 2(f)(iii).

    expenses relating to assets or executory contracts and unexpired leases to be assumed by the Debtor and assigned to the purchaser (including "cure costs", if any, payable in connection with the assumption and assignment to purchaser); (g) all inventory; (h) all rights in patents, trademarks, copyrights and all other intellectual property; (i) all computer software or systems; (j) all rights to payment from the licensees of intellectual property; (k) all business records; (l) all claims and causes of action; (m) all assets used in the operation of the business including assets under lease; (n) all rights under assigned contracts; and (o) all such other assets not enumerated herein (collectively, the "Assets").

*Id*.

    5.    Additionally, in the Bid Procedures Motion, the Debtor disclosed that it was in the final stages of negotiations with Black Energy Corp. ("Black Energy") to serve as the stalking horse bidder while attaching a term sheet that it had received from Black Energy seeking to acquire the Assets. *Id*. at ¶ 13 and Exhibit C.[2]

    6.    On January 7, 2025, KU filed a limited objection to the Debtor's DIP Motion [Doc. No. 153] on the grounds that the DIP Loan or DIP Transaction (as defined in the DIP Motion) seeks to prime deposits and other security that is currently held or may in the future be held by KU, arguing that priming should not be permitted because it would render the security to which KU is entitled under 11 U.S.C. § 366 meaningless, among other things. A final hearing on the DIP Motion has been scheduled for January 23, 2025 and counsel for the Debtor and KU are discussing the inclusion of certain language in the final DIP Order to address KU's concerns.

    7.    Pursuant to the Utilities Order, on January 9, 2025, KU filed its *Demand For Assurance* [Doc. No. 175] with the Court in which it seeks, among other things, a two-month adequate assurance deposit in the amount of $357,926 (less the amount of any remaining pre-petition security) from the Debtor as security for the Accounts post-petition. A hearing of KU's

---

[2] To date, Black Energy has not been officially named as the stalking horse bidder and no asset purchase agreement has been filed with the Court.

Demand for Assurance has been scheduled for February 20, 2025 [Doc. No. 226] pursuant to the procedures set forth in the Utilities Order.

8. The Debtor's Bid Procedures Motion contemplates the possible sale of substantially all of the Debtor's Assets to a stalking horse bidder or other purchaser which Assets appear to include any remaining pre-petition security that KU may be holding for the Accounts along with any adequate assurance deposits that may later be provided to KU for the Debtor's Accounts with it. Presumably, the Debtor will continue to obtain electricity from KU through the closing date of any sale, with its Accounts likely being terminated at that time. KU notes that, on average, the Debtor incurs approximately $179,000 in utilities charges per month and it will need time to prepare final bills for the Accounts once they are terminated. Accordingly, KU objects to any proposed sale of the Debtor's Assets to the extent that the Debtor is seeking to sell or affect KU's interest in any pre-petition or post-petition security that KU may have for the Accounts now or in the future (the "KU Account Security"). Permitting the sale and transfer of KU's Account Security at a time when there will still be charges due and owing from the Debtor to KU would entirely defeat the purpose of that security, undercut the protections given utility providers under 11 U.S.C. § 366, and increase administrative claims against the estates. The KU Account Security should be excluded from the Assets being sold.

9. Out of an abundance of caution, KU hereby gives notice that, if the Debtor's Accounts with it are terminated upon the closing of a sale of its Assets, the purchaser of those Assets, should it desire to receive electricity from KU, will need to establish new accounts in its own name with KU and provide KU with the requisite security for said accounts. The purchaser and the Debtor should work together and communicate with KU throughout this process to ensure

that there is a continuous and uninterrupted flow of electricity to the Assets as they are transferred to the purchaser.

## RESERVATION OF RIGHTS

KU expressly reserves all rights with respect to this Limited Objection, including the right to amend or supplement same, file additional and supplemental papers as necessary, and make any other or further objections at any hearing on the Bid Procedures Motion or a sale motion, and any other subsequent proceedings. KU further reserves the right to respond, further object, join in, or amend any objection or argument made by any party relating to the Bid Procedures Motion, as currently filed or subsequently amended or revised. KU also expressly, fully, and completely reserves any and all rights, powers, privileges, remedies, interests, claims, actions, defenses, setoffs, and otherwise to which it is or may be entitled in law, at equity, pursuant to contract, or otherwise. Nothing herein shall be construed as a waiver of KU's rights.

Respectfully submitted,

STOLL KEENON OGDEN PLLC

/s/ Emily L. Pagorski
Lea Pauley Goff (KBA No. 81266)
Emily L. Pagorski (KBA No. 90682)
400 W. Market Street, Suite 2700
Louisville, Kentucky 40202
Phone: (502) 333-6000
lea.goff@skofirm.com
emily.pagorski@skofirm.com

Adam M. Back (KBA No. 91003)
300 West Vine Street, Suite 2100
Lexington, Kentucky 40507-1801
Phone: (859) 231-3000
adam.back@skofirm.com

*Counsel for Kentucky Utilities Company including its Old Dominion Power Company unit*

5

**CERTIFICATE OF SERVICE**

      This is to certify that a true and accurate copy of the foregoing was served on all parties that have requested notice *via* electronic service on this 17th day of January, 2025.

      /s/ Emily L. Pagorski
*Counsel for Kentucky Utilities Company including its Old Dominion Power Company unit*